# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**LEVANDER DAVIS,**

      **Petitioner,**

                             **Case No. 2:15-cv-00613**

   **v.**                          **JUDGE GEORGE C. SMITH**

                                  **Magistrate Judge King**

**DONALD MORGAN, WARDEN,**

      **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* ECF No. 3), Respondent's *Return of Writ* (ECF No. 9), Petitioner's *Reply to Respondent's Answer* (ECF No. 20) ("*Reply*"), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's *Motion to Expand the Record* (ECF No. 19) is **DENIED.**

## Motion to Expand Record

Petitioner has filed a *Motion to Expand the Record* pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts[1] to include the following materials: documents relating to post conviction proceedings that occurred after the filing of the

---

[1] Rule 7 provides:

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

*Return of Writ*, "State's Exhibit 43 (crime scene photo)," the transcript of his sentencing hearing, docket sheets, and a notification to Petitioner from the Clerk of the Ohio Supreme Court declining to file documents related to the appeal of his Rule 26(B) application. *Id.* (ECF No. 19). Respondent has not responded to that motion.

The Court concludes that the materials sought by Petitioner are not necessary to the resolution of this action. The petition for post conviction relief, and the trial court's entry denying that petition, are already included in the record before this Court, as is the trial court's *Entry* denying his petition for post conviction relief, the Ohio Supreme Court's decision declining to accept jurisdiction of the appeal, and various other exhibits that Petitioner has attached to his *Reply*. Moreover, the decision of the state appellate court affirming the denial of petitioner's post conviction action is also available to this Court. *State v. Davis*, 15AP-518, 2015 WL 6522858 (Ohio App. 10th Dist. Oct. 29, 2015). Petitioner's sentencing transcripts, and the remaining items that he requests are not necessary to permit this Court to resolve Petitioner's claims or to determine whether Petitioner has committed a procedural default. Further, Petitioner could have submitted the letter that he apparently received from the Clerk of the Ohio Supreme Court. Instead, he "cropped and pasted" only a portion of that letter to his *Reply*.

For all these reasons, Petitioner's *Motion to Expand the Record* (ECF No. 19) is **DENIED**.

### Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On May 2, 2011, defendant was indicted on one count each of murder, attempted murder, felonious assault, having a weapon while under disability, and illegal possession of a firearm in a liquor permit premises. Each charge also carried a firearm

specification. Upon application of the assistant prosecuting attorney, and for good cause shown, the trial court ordered that a *nolle prosequi* be entered as to the illegal possession of a firearm in a liquor permit premises charge. Following trial, defendant was found guilty of the remaining charges in the indictment. The events giving rise to the indictment occurred during the early morning hours of March 8, 2012.

On March 8, 2012, defendant was a patron at Mike's Bar in Columbus, Ohio. The area where Mike's Bar is located is a high-crime area known to have gang related activity. That night, there were several patrons inside the bar near defendant, including Brandon Houston, DeAndre Fagain, and Dimetri Evans, all of whom testified at defendant's trial.

Houston testified that he was at the bar with his friends, Tumarcus Steele, Donatello Taliaferro, Fagain, and a man named Al, whose last name Houston did not know. According to Houston, there were approximately 40 patrons inside Mike's Bar that evening. Houston testified that he observed defendant at the bar with two other men, neither of whom Houston knew: Tracy Ferguson, Jr., and a man with tattoos on his face who was later identified as Evans. Shortly after Houston arrived, he saw defendant lift his shirt and expose a gun. At the same time, Houston observed Ferguson "throwing up gang signs in the mirror." (Tr. 101.) At that time, Evans approached Ferguson and tried to get him to stop. Instead, Ferguson became more hostile and began arguing with Evans and defendant. At that time, Houston observed defendant reach for his hip and extend his arm. Houston heard the first gun shot at which time he turned and ran into the bathroom. According to Houston, he heard three gun shots, followed by silence and then additional gunfire and screaming. Houston stayed in the bathroom until the bar was quiet. Houston did not see defendant actually fire the gun and did not see anyone get shot. As he left the bar, Houston stumbled on a magazine clip from a gun which he pointed out to police.

Fagain testified that he observed three people in the bar having an argument, and described one of those men as trying to calm down one of the other two men. Fagain observed defendant first hit Ferguson and then pull out a gun and shoot Ferguson. Fagain testified further that, after defendant shot Ferguson, defendant "just started shooting up the club." (Tr. 260.) Fagain testified that defendant was the only one shooting at the time. When the shooting began, Fagain turned to run and was shot several times.

Evans was at the bar that night with defendant and Ferguson. Evans' testimony corroborated Houston's testimony that Ferguson was throwing up gang signs. Evans testified that he knew defendant had several different guns, he knew defendant frequently carried a gun, and sometimes carried more than one gun. Evans testified that he saw defendant with a gun on the night in question, and saw defendant shoot Ferguson.

Columbus Police Officer Jim Thiel was the first officer to arrive at the scene. Officer Thiel saw four to five shell casings lying in the entrance to the bar. Columbus Police Officer Timothy Mounts testified that eleven 9mm spent shell casings were recovered from the north end of the bar and that, in that same area, thirty-three 40 caliber spent shell casings were also recovered. It was determined that the 9mm shell casings had been fired from a 9mm gun which was later recovered from defendant. Columbus Police Officer Kevin Jackson testified and identified photographs he took at the scene. Columbus Police Detective Jacqueline Mitchell identified evidence which she collected and logged, including a black ammunition magazine clip found near the entrance to the bar.

Columbus Police Sergeant Jeff Matthias testified concerning the circumstances surrounding defendant's arrest. At the time of his arrest, defendant admitted that he had a gun in his waistband. Sergeant Matthias identified the gun recovered from defendant as a loaded 9mm Smith & Wesson. A ballistics expert determined that the 9mm casings found at the scene were fired from defendant's handgun. The 40 caliber handgun was never recovered.

The magazine clip Houston saw in the doorway was recovered and was determined to be a 40 caliber handgun magazine clip. DNA obtained from the magazine clip was compared to a sample of defendant's DNA and it was determined that defendant was a major contributor to the DNA on the magazine clip. During cross-examination, the forensic scientist who processed the DNA sample explained that a major contributor "relates to the quantity of that DNA being left on that item." (Tr. 597.) The analyst also testified that DNA can be transferred from one object to another.

Defendant's counsel called Columbus Police Detective Robert Wachalec to testify. Detective Wachalec was the blind administrator for a photo array presented to Fagain. In his report regarding the photo array, Detective Wachalec indicated that Fagain identified Evans as the shooter. Detective Wachalec testified at trial that his summary of the identification was not

accurate, because Fagain had actually identified defendant as the shooter.

Following a sentencing hearing on January 18, 2012, defendant was sentenced to serve 15 years to life for the murder conviction, ten years for the attempted murder conviction, eight years for the felonious assault conviction, three years for having a weapon while under disability conviction, and three years for each firearm specification. The trial court ordered that defendant serve the attempted murder, felonious assault, and having a weapon while under disability sentences concurrently to each other, but consecutive to the murder sentence and consecutive to the firearm specifications. The court merged two of the sentences for the firearm specifications. The court further ordered that defendant serve the sentence herein consecutive to a ten years prison sentence from common pleas case No. 11CR–2202, for a total prison term of 44 years to life.

II. ASSIGNMENTS OF ERROR

Defendant appeals and presents the following two assignments of error:

[I.] THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S CRIM. R. 29 MOTION FOR JUDGMENT OF ACQUITTAL, AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

[II.] THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY PROVISIONS OF THE OHIO CONSTITUTION BECAUSE THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*State v. Davis*, No. 12AP-156, 2013 WL 3356569, at *1-3 (Ohio App. 10th Dist. June 28, 2013).

On June 28, 2013, the appellate court affirmed the judgment of the trial court. *Id.* On November 20, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Davis*, 137 Ohio St.3d 1413 (Ohio 2013).

On September 5, 2014, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 9-1, PageID# 252). Petitioner asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise the following claims on appeal: DNA evidence was unconstitutionally introduced at trial; the trial court improperly imposed consecutive terms of incarceration on firearm specifications committed as a part of the same act or transaction; DNA evidence on the .40 caliber magazine clip was improperly admitted; he was denied his right to due process by the admission of photographic identification testimony into evidence; the trial court erred in overruling his motion for judgment of acquittal; and his convictions were against the manifest weight of the evidence. (PageID# 253-260). On November 21, 2013, the appellate court denied Petitioner's Rule 26(B) application. (PageID# 294). Petitioner filed a *Motion to Certify Record to Supreme Court to Resolve Conflict* in regard to the second proposed assignment of error in his Rule 26(B) application. (PageID# 298). On December 17, 2013, the appellate court denied that motion as untimely. (ECF No. 311).

> In June 2013, Davis filed a petition for post-conviction relief with minimal evidence attached to the petition. . . .
>
> The trial court judge filed a written decision on April 23, 2015 denying the petition for post-conviction relief. The trial court wrote:
>
> In the petition to vacate the judgment, Defendant argues that he was denied effective assistance of counsel and that his DNA was improperly seized. The Defendant failed to attach any evidence to support either claim. In fact, the Defendant's claim regarding the warrant for the DNA was improper is incorrect. Defendant makes the claim that the warrant was never signed when in fact it was. In addition, each of the Defendant's claims in his post conviction petition could have been or were addressed on direct appeal and are, therefore, barred by the doctrine of *res judicata. State v. Mack*, 10th Dist. No. 13AP–884, 2014–Ohio–1648.

6

*State v. Davis*, No. 15AP-518, 2015 WL 6522858, at *3 (Ohio App. 10th Dist. October 29, 2015).

> Levander R. Davis is appealing from the denial of his petition for post-conviction relief. He assigns five errors for our consideration:
>
> [1.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO HOLD AN EVIDENTIARY HEARING ON THE APPELLANT'S POST–CONVICTION PETITION.
>
> [2.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF PURSUANT TO THE MANY CONSTITUTIONAL VIOLATIONS RELATED TO PRETRIAL IDENTIFICATION.
>
> [3.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF RELATED TO THE .40 CALIBER HANDGUN.
>
> [4.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF RELATED TO THE SEARCH WARRANT FOR BUCCAL SWABS, WHICH WAS INVALID BECAUE IT WAS NOT SIGNED BY A JUDGE OR MAGISTRATE.
>
> [5.] THE TRIAL COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT FAILED TO PROVIDE RELIEF RELATED TO POLICE OFFICER'S MISHANDLING OF THE BUCCAL SWABS TAKEN FROM THE APPELLANT FOR THE PURPOSES OF DNA TESTING.

*Id*. at *1.  On October 29, 2015, the appellate court affirmed the judgment of the trial court.  *Id*.

On March 9, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal from

that decision.  *State v. Davis*, 145 Ohio St.3d 1408 (Ohio 2016).

On February 12, 2015, Petitioner filed this habeas corpus action pursuant to 28 U.S.C. §

2254.  He alleges that the trial court erred when it overruled his motion for judgment of acquittal

(claim one); that his convictions were against the manifest weight of the evidence (claim two);

that his DNA evidence was admitted in violation of the Fourth Amendment because it was

obtained without a valid search warrant (claim three); that the trial court improperly imposed

consecutive terms of incarceration on firearm specifications committed as part of the same act or transaction (clam four); that DNA samples were improperly handled, in violation of due process (claim five); that the investigator's contamination of crime scene evidence violated due process (claim six); that the pre-trial photo array identification procedures violated due process (claim seven); that the evidence was constitutionally insufficient to sustain his convictions (claim eight); and that he was denied the effective assistance of trial and appellate counsel (claims nine and ten). Respondent contends that Petitioner's claims are without merit, not cognizable in federal habeas corpus proceedings, or procedurally defaulted.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21,

(2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 562 U.S. at 102 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence." (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

## Claims One and Eight

In claim one, Petitioner alleges that the trial court erred in overruling his motion for judgment of acquittal.[2] In claim eight, Petitioner alleges that the evidence is constitutionally insufficient to sustain his convictions.

---

[2] Rule 29 of the Ohio Rules of Criminal Procedure provides, "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction

To the extent that Petitioner presents a claim regarding an alleged violation of a state rule, the claim fails to provide a basis for federal habeas corpus relief.  A federal court may review a state prisoner's habeas corpus petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988)).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition.  *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985).

However, before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution.  *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, at 319).  The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt."  *Id*. (quoting *Jackson,* at 326).  "[A] reviewing court 'faced with a record that supports conflicting inferences must presume – even if it does not appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *Id.* (quoting *Jackson*, at 326).

---

of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so.

The state appellate court rejected Petitioner's claim of insufficiency of evidence in relevant part as follows:

> Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Conley*, 10th Dist. No. 93AP–387 (Dec. 16, 1993). When reviewing the sufficiency of the evidence, the court does not weigh the credibility of the witnesses. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002–Ohio–2126, ¶ 79.

> Defendant argues that the State did not demonstrate that he: (1) purposely caused the death of Ferguson, (2) attempted to purposely cause the death of Fagain, (3) knowingly caused serious physical harm to others, or (4) that he had a prior felony conviction and possessed a weapon. According to defendant, the State failed to prove beyond a reasonable doubt that he fired a 40 caliber handgun that night.

> The State presented two eyewitnesses who saw defendant shoot Ferguson, and a third eyewitness who saw defendant with a gun

that night. Further, although defendant claimed that there were multiple shooters in the bar that night, all three eyewitnesses who testified saw only one person with a gun in the bar before the shooting, and that person was the defendant.

Although a 40 caliber handgun was not recovered that night, a 40 caliber magazine clip was recovered. Forensic evidence established that defendant was a major contributor of DNA on the magazine clip. Further, the 9mm and 40 caliber spent shell casings which were recovered from the bar were all found in the same general area, the north end of the bar.

Here, both eyewitness testimony and circumstantial evidence indicated that defendant was the shooter at Mike's Bar that night and that he was the one who killed Ferguson and wounded Fagain. Accordingly, sufficient evidence supported the jury's conclusion that defendant purposely caused Ferguson's death, attempted to cause Fagain's death, knowingly caused serious physical harm to others, and had a weapon while under disability.

Because the evidence, when viewed in a light most favorable to the State was legally sufficient to support defendant's conviction, the trial court properly overruled defendant's Crim.R. 29 motion. Defendant's first assignment of error is therefore overruled.

\*\*\*

The State presented physical and scientific evidence establishing that defendant possessed a 40 caliber handgun on the night of the shooting. First, the State presented two eyewitnesses who saw defendant shoot Ferguson, and one of those eyewitnesses was a friend of defendant. Second, Fagain specifically testified that defendant shot him. The evidence established that Fagain was shot twice in the stomach, indicating that he was facing defendant at the time the shots were fired. Second, there were thirty-three 40 caliber shell casings found inside the bar in the same general area as the 9mm shell casings which were fired from the gun recovered from defendant. This indicates that both guns were fired from the same general area. Third, DNA testing revealed that defendant was a major contributor to the DNA recovered from the 40 caliber magazine clip. As the State's expert noted, there are major contributors and minor contributors and here defendant was a major contributor to the DNA present on the 40 caliber magazine clip. Fourth, there was testimony that defendant owned several handguns and was known to carry more than one gun on occasion.

> .  .  .  The direct and circumstantial evidence indicating that
> defendant shot and killed Ferguson and wounded Fagain, including
> eyewitness testimony and other physical evidence recovered from
> the scene, provided the jury with credible, competent evidence on
> which to find defendant guilty on all counts beyond a reasonable
> doubt.

*State v. Davis*, 2013 WL 3356569, at *3-5.

Petitioner argues that the evidence is constitutionally insufficient to sustain his convictions because the bullets removed from both Ferguson and Fagain were from a 40 caliber gun, and no witness testified that Petitioner possessed a 40 caliber handgun or saw him in possession of multiple firearms.  According to Petitioner, Houston and Faigan had difficulty identifying him as the person in possession of a firearm, and Evans' testimony was unreliable because he testified pursuant to a plea agreement with the prosecution.  Petitioner also notes that all of the injuries sustained on the night in question were caused by a 40 caliber handgun.  Under all these circumstances, Petitioner argues, the evidence suggests that there must have been multiple shooters because he would have had to re-load at least three times in order to have fired the thirty-three spent shell casings that were recovered from the scene.  Petitioner insists that he could not have fired his 9 mm. handgun eleven times and also have fired an additional thirty-three times from a 40 caliber firearm prior to the arrival of police.  Referring to the DNA evidence linking him to the 40 caliber magazine clip, Petitioner contends that this evidence does not necessarily indicate that he used that firearm, because there was also evidence that DNA can be transferred or left behind; according to Petitioner,  crime scene investigators likely transferred his DNA when they dusted for fingerprints.  Additionally, Petitioner states that police found the 40 caliber magazine clip lying in a puddle of his urine, which could also have explained the

presence of his DNA.  Petitioner argues that the State failed to establish that he attempted to cause the death of Fagain, because Fagain did not actually witness the person who shot him.[3]

However, Petitioner does not dispute the factual findings of the state appellate court, nor has he rebutted the presumption of correctness afforded to these factual findings.  *See* 28 U.S.C. § 2254(e)(1). For the reasons discussed by the state appellate court, this Court agrees that, when viewing all the evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's convictions.  Petitioner has failed to establish that the state appellate court contravened or unreasonably applied federal law in denying his claim of insufficiency of the evidence, or that the state appellate court based its decision on an unreasonable determination of the facts in light of the evidence presented.  As noted *supra*, all three witnesses identified Petitioner as the only person in possession of a firearm on the night in question.  Faigan watched Petitioner shoot Ferguson and firing throughout the club.  No witness observed any other shooters in the bar on that night.  Petitioner's friend, Evans, testified that Petitioner owned several different guns, frequently carried a gun, and sometimes carried more than one gun.  Evans also saw Petitioner shoot Ferguson.  Petitioner was identified as a major contributor to the DNA found on the 40 caliber magazine clip located at the scene.  In light of this evidence, combined with the multiple shell casings found at the scene and which apparently had been fired within a short period of time, the fact that police did not recover the 40 caliber gun simply does not render the evidence constitutionally insufficient to sustain Petitioner's convictions.

---

[3] Referring to *State v. Nolan*, 141 Ohio St.3d 454 (Ohio 2014), Petitioner also argues that attempted murder does not constitute a crime under Ohio law, and that his conviction  on that charge should be reversed on that basis as well. In *State v. Nolan*, the Ohio Supreme Court held that attempted felony murder, under O.R.C. § 2903.02(B),[3] is not a cognizable crime in Ohio.  *Id*. at 456.  However, Petitioner was not charged with or convicted of attempted felony murder but, rather, of the attempted murder of Deandre Fagain.  *Indictment* (ECF No. 9-1, PageID# 93).

Claims one and eight are without merit.

## Claim Two

In claim two, Petitioner alleges that his convictions are against the manifest weight of the evidence. Petitioner acknowledges that this claim fails to present an issue appropriate for federal habeas corpus review, and has withdrawn this claim. *Reply* (ECF No. 20, PageID# 624).

Claim two is without merit.

## Claim Three

In claim three, Petitioner alleges that he was denied a fair trial because DNA evidence was admitted in violation of the Fourth Amendment.  Generally, habeas corpus relief cannot be based on an alleged violation of the Fourth Amendment, so long as the petitioner had an opportunity to present the claim to the state courts.  *Stone v. Powell*, 428 U.S. 465, 482 (1976); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)(opportunity for full and fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism.)

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. [*Stone v. Powell*], at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id*. at 493, 96 S.Ct. 3037.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013).

Ohio permits a criminal defendant to file a motion to suppress evidence prior to trial. *See* Ohio R. Crim. P. 12(C)(3). Further, there is no basis in the record upon which to find that Petitioner was unable to present a claim under the Fourth Amendment because of a failure of Ohio's procedural mechanism.

Petitioner argues that *Stone v. Powell* does not preclude review of his claim in these proceedings, because his attorney failed to file a motion to suppress DNA evidence as illegally obtained. *Reply* (ECF No. 20, PageID# 629-30). However, the United States Court of Appeals for the Sixth Circuit has made clear that "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts[.]" *Good v. Berghuis*, 729 F.3d at 639. The fact that Petitioner did not avail himself of that opportunity before the trial court does not mean that he can do so here.

Claim three is without merit.

## Procedural Default

Respondent contends that Petitioner has procedurally defaulted certain claims. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the defendant fails to do so, but still has an avenue open to him by which he may present his claims to the state courts, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if

later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that, if the claims are not presented to the state courts in the way in which state law requires and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words of the Supreme Court, "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state

procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the court determines that a state procedural rule was not satisfied, and that the rule is an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies even to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

In order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause sufficient to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). However, in order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id*. at 452 (quoting *Murray v. Carrier*, 477 U.S. at 479). In order to constitute cause sufficient to excuse a procedural default, the ineffective assistance of counsel "must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). If the claim of ineffective assistance of counsel is also procedurally defaulted, the petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards*, 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion

> requirement by defaulting their federal claims in state court. The
> independent and adequate state ground doctrine ensures that the
> States' interest in correcting their own mistakes is respected in all
> federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115
> L.Ed.2d 640. We again considered the interplay between
> exhaustion and procedural default last Term in *O'Sullivan v.*
> *Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999),
> concluding that the latter doctrine was necessary to "'protect the
> integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838,
> 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id*., at 853, 526 U.S. 838,
> 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The
> purposes of the exhaustion requirement, we said, would be utterly
> defeated if the prisoner were able to obtain federal habeas review
> simply by "'letting the time run'" so that state remedies were no
> longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144
> L.Ed.2d 1. Those purposes would be no less frustrated were we to
> allow federal review to a prisoner who had presented his claim to
> the state court, but in such a manner that the state court could not,
> consistent with its own procedural rules, have entertained it. In
> such circumstances, though the prisoner would have "concededly
> exhausted his state remedies," it could hardly be said that, as
> comity and federalism require, the State had been given a "fair
> 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838,
> 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)
> (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70
> S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default has occurred, the court may not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. at 495–96).

In claim four, Petitioner alleges that the trial court unconstitutionally imposed consecutive prison terms on firearm specifications. In claim five, Petitioner alleges that police improperly handled DNA samples, thereby denying him due process. In claim six, Petitioner

alleges that investigators' contamination of the crime scene denied him due process.  In claim seven, Petitioner alleges that he was denied a fair trial due to the admission of identification testimony based on improper photo array procedures.  In claim nine, Petitioner alleges that he was denied the effective assistance of trial counsel.  However, Petitioner failed to raise any of these claims on direct appeal, where he was represented by new appellate counsel.  Further, he may now no longer do so under Ohio law, which provides that an issue appearing on the record but not raised on direct appeal is barred by the doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

Petitioner attempted to present some of these claims in his petition for post conviction relief; however, the state appellate court explicitly declined to address the merits of those claims because they were foreclosed under Ohio's doctrine of *res judicata.* "The trial court judge's findings that the doctrine of *res judicata* barred relief are correct. Everything alleged by Davis was either litigated during the trial or could have been litigated at the trial."  *State v. Davis*, 2015 WL 6522858, at *3.

This Court has consistently determined that Ohio's *res judicata* rules serve important state interests in the finality of criminal convictions. *See, e.g. Davenport v. Warden, Ross Correctional Inst.,* No. 2:14-CV-0245, 2015 WL 1321583 (S.D. Ohio March 24, 2015), *adopted and affirmed*, 2015 WL 1914277 (S.D. Ohio April 27, 2015); *Wiley v. Banks*, No. 2:13-CV-99, 2013 WL 1663962 (S.D.Ohio Apr.17, 2013), *adopted and affirmed* 2013 WL 3350668 (S.D. Ohio July 3, 2013).

Petitioner may still obtain a merits review of these claims if he can establish cause for his procedural default as well as actual prejudice from the alleged constitutional violations.  As

cause for his failure to raise these claims on direct appeal, Petitioner asserts the denial of the effective assistance of appellate counsel, as presented in habeas corpus claim ten.  As noted *supra*, the denial of the effective assistance of counsel may constitute cause for a procedural default if that claim has been presented to the state courts and has not also been procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. at 452-53.  However, Petitioner procedurally defaulted his claim of ineffective assistance of appellate counsel, because he never filed a timely appeal to the Ohio Supreme Court of the appellate court's November 21, 2013, decision denying Petitioner's Rule 26(B) application to reopen the direct appeal based on ineffective assistance of appellate counsel.  Further, Petitioner may now no longer do so, because Ohio does not permit delayed appeals in Rule 26(B) proceedings.  Ohio Sup. Ct. Prac. R. 7.01(A)(4)(c).

Petitioner asserts, however, that he has established cause and prejudice for his failure to file a timely appeal to the Ohio Supreme court in Rule 26(B) proceedings.  "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default.  *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001)(citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999))(internal citation omitted).

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule."  *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003); *see also Lundgren v. Mitchell*, 440 F.3d 754, 763–64 (6th Cir. 2006)(citing *Murray v. Carrier*, 477 U.S. at 488).  A petitioner's *pro se* status or "ignorance of the law and procedural requirements for filing a notice of appeal is insufficient to establish cause to excuse his procedural default."  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)(citing *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)).  In order to

establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007)(citing *Jamison v. Collins*, 291 F.3d 380, 386 (6th Cir. 2002)(holding that the prosecution's withholding of *Brady* evidence qualified as a "substantial reason for the default that is external to [the petitioner]")). *See, e.g., Maples v. Stegall*, 340 F.3d at 438–39 (failure by prison officials to promptly deliver legal mail may constitute cause for procedural default); *but see Martin v. Vannatta*, unpublished, 175 Fed. Appx. 45 (7th Cir. Mar. 23, 2006)(rejecting petitioner's assertion that inadequate funds for postage constituted cause for his untimely filing where he could have obtained free postage.)

Here, Petitioner represents that he timely submitted appropriate pleadings for his Rule 26(B) appeal to prison officials for mailing to the Ohio Supreme Court, but that the prison had no notary available.  He also alleges that prison officials "somehow lost or otherwise misplaced" some of his pleadings and that the "un-notarized, incomplete package was returned to the Petitioner with a notification from the Ohio Supreme Court Clerk that the pleadings could not be filed until the corrections were made." *Motion to Expand Record* (ECF No. 19, PageID# 604). Although Petitioner did not attach a complete copy of the letter from the Clerk of the Ohio Supreme Court, he states that his appeal documents were not filed because they did not meet the requirements of the Rules of Practice of the Supreme Court of Ohio.  The Clerk of the Ohio Supreme Court advised Petitioner:

> You did not submit a notice of appeal as required by Rule 7.01(A)(1)(a)(i);
>
> Your memorandum in support of jurisdiction exceeds the page limitation set forth in Rule 7.02(B);
>
> Your memorandum in support of jurisdiction contains attachments that are not judgment entries or opinions issued in the case, and therefore violates Rule 7.02(D)(3).

> To timely appeal a November 22, 2013 court of appeals decision, a notice of appeal, memorandum in support of jurisdiction in compliance with the Rules of Practice, and your affidavit of indigence were due in the clerk's office no later than January 6, 2014.

*Reply* (ECF No. 20, PageID# 614).[4]  Petitioner takes the position that it was the fault of prison officials that caused these deficiencies in his filing with the Ohio Supreme Court; he insists that these deficiencies did not exist in his filing when he submitted it to prison officials for mailing. *Id.* at (PageID# 615-16).

Petitioner has failed to meet his burden of establishing cause for his procedural default of his claim of ineffective assistance of appellate counsel.  Nothing in the record supports his claim that he timely submitted the appeal to prison officials for mailing, or that his filing otherwise complied with the Rules of the Ohio Supreme Court, and that prison officials somehow improperly mailed the wrong, or incorrect, or modified documents on his behalf.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992).  After review of the record, the Court does not deem this to be such a case.

In short, the Court concludes that claims four through seven, and claims nine and ten, are procedurally defaulted.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

---

[4] Petitioner represents that he "cropped and pasted" into his *Reply* (ECF No. 20) a portion of the Clerk's letter. *Id.* (PageID# 614).

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


        *s/ Norah McCann King*
        Norah McCann King
        United States Magistrate Judge

November 2, 2016